IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF GEORGIA

COLUMBUS DIVISION

| | |
|---|---|
| **SHEREEN R GREENE**<br><br>                 Plaintiff<br><br>       v.<br><br>**QUICKEN LOANS INC., AMROCK INC.** f/k/a TITLE SOURCE INC., **MERS** (MORTGAGE ELECTRONIC REGISTRATION SYSTEMS), ALL **JOHN DOES/JANE ROES/JANE DOES/JOHN ROES**, UNDISCLOSED MORTGAGE AGGREGATORS, WHOLESALERS, MORTGAGE ORIGINATORS, LOAN SELLERS, TRUSTEE FOR HOLDERS OF CERTIFICATES OF COLLATERALIZED MORTGAGE OBLIGATIONS, INVESTMENT BANKERS, FUTURE BUYERS AND INVESTORS, INDIVIDUALLY, JOINTLY AND SEVERALLY,<br><br>               Defendants. | Civil Action No. 4:18-CV-00199-CDL |



**AMENDED DEFENDANTS and**

**APPEAL/OBJECTION TO <u>ORDER</u> TO DISMISS ABOVE-CAPTIONED CASE**

**DATED FEBRUARY 28, 2019**

**RECEIVED MARCH 2, 2019**

Slide1
of 24

PLAINTIFF'S CASE

CIVIL ACTION NO 4:18-cv-00199-CDL

Demand for Jury Trial

# US DISTRICT COURT

# MIDDLE GA, Columbus GA

Judges Clay Land / Stephen Hyles

RE: Quicken Loans No. 3354859355
FHA Mortgage Case No.

# APPEAL OF JUDGEMENT/ORDER TO DISMISS CASE

As I was unable to find anything pertaining to this case in the <u>ORDER</u> to dismiss this case that pertains to the actual *facts* of this matter, I am filing this Appeal of the Order to Dismiss.

I did <u>not</u> default on this *alleged* loan, that much is clear. I have never defaulted on it and had no plans to default on it, and it has also been <u>less than two years</u> since I discovered Quicken's defalcation that caused the actual problem. Payments should never change on a fixed rate loan when nothing else had.

This defalcation was discovered one year ago, not two. I attempted to pay this amount, but as the loan was predatory and meant to end up in this manner in order to collect on the FHA insurance, as with so many other loans, I was not able to do so. They had already factored this matter in with the belief that HUD would never review this loan or any of the others they have also filed False Claims on.

Also, when the matter was addressed with them about or around 12 months ago, a loan modification to change it to conventional uninsured in order to make the loan affordable again was fully approved and then withdrawn during an attempt at extortion for me to keep the modified loan.

I am also amending this case to remove *all* Defendants except for the following: **QUICKEN LOANS**, as previously stated and served; **MERS**, as previously stated and served; **AMROCK** fka "Title Source", as previously stated and served; and ALL **John Does/Jane Roes/Jane Does**, as fictitious characters previously stated and served.

I did not sue Liberty Utilities or ADT, I was ordered to send in their addresses and only complied with that order. Though the Closing Attorney, Cook & James, did not review the documents, also part of the defalcation of this loan and not to my credit as a matter of default, it was Quicken's responsibility to prepare them properly from the start. Using a "notary signing agent" on these types of laws is exactly what causes these types of problems – they should be handled by fiduciaries and trust, not by document handlers.

Challenges to MOTIONS TO DISMISS for FAILURE OF CAUSE TO STATE A CLAIM FOR RELIEF

The Motion for "failure to state a claim" under Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Sutton v. Utah St. Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999)).

In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th Cir. 2007). At the same time, however, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only `give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (omission marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008).

Nonetheless, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (internal quotation marks and alteration marks omitted).

Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson,* 534 F.3d at 1286 (alteration marks omitted). - **RE/MAX, LLC v. QUICKEN LOANS INC., Civil Action No. 16-cv-02357**

The Battle is not mine, it is the Lord's //1 of 5

I worked for some of the best and brightest young lawyers in Atlanta, and they taught me a lot, including the old adage "*He who represents himself in court has but a fool for a lawyer.*"

I am not trying to be a Lawyer in this case or any others, but I was pushed into a position where I had and have no choice but to defend myself and my home, my **TARA**.

As one of the African-American descendants of the W.C. Bradley family of Fort Mitchell, AL and Columbus, GA, disenfranchised under "race laws" forged in and by the United States of America, I know that my European ancestors would have done no less than I, to defend our homes and land from such encroachers and predators as Quicken Loans.

It is the court's job to protect the consumer under Consumer Rights Laws, RESPA and TILA, or there is no point in making such laws. The private right of action is established and assumed, as no one else would have suffered any rock of offense or cause of stumbling under those laws *but* the Consumer. This creates an ultimate "private right of action" that no one else is privy to exercise, because no one else can sue under Consumer Laws except the Consumer.

If the Consumer cannot create a *private right of action*, then there is no reason for the laws to exist. NONE.

**The Battle is not mine, it is the Lord's //2 of 5**

Quicken Loans, a known predatory lender throughout the nation as shown by the many lawsuits and class action Petitions now outstanding against it, including one filed by the Justice Department in Civil Action No. 15-0613 - **COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT, 31 USC §3729-3733 and COMMON LAW**, is situated and headquartered in the state of Michigan where is its own domiciled headquarters, as well as AMROCK's.

Quicken's principal owner is Dan Gilbert, Forbes magazine **$6-Billion Dollar Man.**

It is not any wonder that Quicken and its cohorts and associates can afford to pay the Jones Day law firm $600 an hour in this costly pursuit, but it's pretty obvious that I cannot afford to do the same, as all I have is my home.

Gilbert and his constituency and those like him seem to think they are the only *entitled* parties in America, though it is the taxpayer in the public trust who pays these defalcated loan bills out of pocket and not those who get rich from it.

Yet, thus saith the Lord God of Heaven, Ecclesiastes 12:14 ... "For God will bring every deed into judgment, including every hidden thing, whether it is good or evil."

To say otherwise is to call God a liar and to speak evil on His Holy Name and to say that the laws of man outweigh and overshadow even the mandates of God.

## The Battle is not mine, it is the Lord's // 3 of 5

According to the US Attorney's case, removed from D.C. to Eastern Michigan, HUD/fha certified Quicken as a DEL (Direct Endorsement Lender), and with that responsibility came certain expected Rules and Procedures that were overlooked, including rules with regard to errors and omissions.

Payday Lender,              , was found guilty of the egregious and even the UNSCRIPTURAL act of causing hundreds of thousands of consumers to pay USURIOUS INTEREST on payday loans; and equality of distribution applies to these matters when there is intent for unjust gain.

**- Proverbs 28:8 He that by usury and unjust gain increaseth his substance, he shall gather it for him that will pity the poor.**

**- 12 U.S. Code §86 - Usurious interest; penalty for taking; limitations: The taking, receiving, reserving, or charging a rate of interest greater than is allowed ... when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same ... .**

In the U.S. District Court case, Gilbert, Quicken's owner, is alleged to have committed -through his agents, executives, fiduciaries, bondspeople, employees, staff, *admittedly improperly-trained* underwriters, friends, enemies, frenemies, and all others situated under his company's control- many RESPA, TILA and GFE violations by way of the federal "False Claims Act -- **31 USC §§ 3729-3733, Civil Action No. 15-0613, State of Michigan, US District Court**.

However, I am a party and parcel of the **COMMON LAW** and that precedent is established by this outstanding Complaint.

I am but one of many thousands covered under the COMMON LAWS as an individual homeowner whose life and property was and is impacted by several of the many ***MATERIAL-not-clerical*** violations of which Quicken Loans is accused, and in my case, have actually committed in manipulating date in order to foreclose on so many loans.

### The Battle is Not Mine, it is The Lord's  //4 of 5

Quicken claims to have not "known" what the property taxes on my home would be, but they were given the estimated amount by me and also received an actual tax bill the following month, less than 30 days later, which should have triggered them to own up to their responsibility to HUD and its FHA loan program.

I had no reason to believe they would not do as I instructed on these escrows or that my payments would end up ballooning or mushrooming to some astronomical amount as more than 50-percent of my proven income.

They were told from the start that that was unaffordable for me, and yet intentionally changed the date of the purchase of this home in order to 'force' it to be approved when they should not have.

That is not a Loan Default, that is a material miscalculation that did *not* take my property taxes into account, but someone else's, and even against my stated instructions. I did not know this more than two years ago. I assumed that they had done as they were told, and had rules and laws to comply with, so I thought no more of it until I had to figure out why my payments changed and attempt to fix it by modifying the loan.

They say it's not *their* fault, but it is not mine either that they cannot follow explicit directions given by the Homeowner or by HUD, and I should not be made to pay or suffer for their errors in any manner whatsoever. The refusal for them to take responsibility is telling, as my only 'crime' was in doing business with them in the first place.

The Battle is not mine, it is the Lord's //5 of 5

CODE OF FEDERAL REGULATIONS / C.F.R. 1024.17

• Violation of the REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA, Reg.X – 24 CFR Part 3500, 12 USC §2601 et seq.) with regard to Escrow Accounting and Initial Escrow Account Statement laws by NEGLIGENT OMISSION and with DELIBERATE INTENT TO MANIPULATE DATA and DEFRAUD – By purposely and willfully using the 2015 property tax bill for the subject property in a new tax year (2016), which billing was assessed on 1/1/2015 when Shereen R. Greene did *not* own the home, and also which billing carried the name of the prior owner, Danny Ray Thompson; and by not using the actual data on the *BONA FIDE* property tax bill that was assessed on 1/1/2016 – *as required by RESPA law* – for the Initial Escrow Account Statement; and then one year later, switching the prior owner's tax bill for the current owner's actual property tax bill, which had been under a property tax freeze since it was assessed on 1/1/2016 and had never "changed" up or down to fit any scenario that would allow a change to the monthly mortgage payments. Any such change would have automatically and *critically* made the monthly payments unaffordable since the payments would have automatically ballooned to more than 50-percent of available income, which was unaffordable then and still is now.

*Bona Fide* - adj. Latin for "good faith," it signifies honesty, the "real thing" and, in the case of a party claiming title as **bona fide** purchaser or holder, it indicates innocence or lack of knowledge of any fact that would cast doubt on the right to hold title. Malafide – a*dj.* illegal or dishonest; *noun.* illegal or dishonest behaviour, especially **by using your job or situation in order to gain an advantage.**

S
P
E
C
I
F
I
C
S

**CODE OF FEDERAL REGULATIONS (CFR), TITLE 12**
**CHAPTER X, PART 1024, SUBPART B**

**Section 1024.17 - (7)***Servicer estimates of disbursement amounts.*

To conduct an escrow account analysis, the servicer shall estimate the amount of escrow account items to be disbursed.

**If the servicer knows the charge for an escrow item in the next computation year, then the servicer shall use that amount in estimating disbursement amounts.**

If the charge is *unknown* to the servicer, the servicer may base the estimate on the preceding year's charge, or the preceding year's charge as modified by an amount not exceeding the most recent year's change in the national Consumer Price Index for all urban consumers (CPI, all items).

In cases of unassessed new construction, the servicer may base an estimate on the assessment of comparable residential property in the market area.

NOTE
Quicken Loans, Inc. had no reason whatsoever NOT to know the EXACT charges for Year 2016, nor to use the prior owner's taxes for Year 2015 to calculate Initial Escrows, as required by law. The property taxes for the NEW OWNER were assessed on 1/1/2016 as per Georgia law. By 4/30/2016, they had no reason *not* to update this information in title by TITLE SOURCE/Michelle Ruff, Esq., n/k/a AMROCK, Inc. and/or by the closing agent, Cook & James, LLC, who should have caught the error before proceeding at all.

If ignorance of the law is no excuse, then BREAKING IT certainly and most assuredly is not. As the CONSUMER, by law, I should not have had to do their homework, their job, nor their title research for them. If I relied on *them*, then THEY should have relied on the federal laws of the United States, the state laws of the State of Georgia and most definitely on the rules and regulations and definitions of what is a fiduciary good-faith, duly diligent and income-viable economically sustainable loan as defined by HUD for the FHA program.

The Lawful Keywords: 'SPECIFIC TO' the Consumer and 'SPECIFIC TO' the Transaction - the prior owner's taxes met NEITHER of those legal Federal RESPA Escrows qualifications. Changing them did not mean an increase in taxes, it meant a SWITCH between two very different owners with very different property tax exemptions that IMPACTED the cost and the monthly payments.

# GEORGIA PROPERTY & MUSCOGEE COUNTY PROPERTY TAX LAWS

Georgia (O.C.G.A.) Code Title 44 is loosely constructed and open-ended and does more to state and prescribe the manner of foreclosure than to protect the actual stated rights of borrowers and homeowners.

On the one hand, it leaves the door open to abuse of financial practices because of the right of *non-judicial foreclosure* by anyone who claims to assert the right to foreclose.

On the other hand, it also opens the door for homeowner and borrower protections to sue in the proper court in the proper jurisdiction in the proper venue to stop the sale and provide for a permanent injunction against the sale in the event that the "Lender," as defined by Georgia law, is not in total compliance with federal law with regard to real estate transactions.

In whole and in part, Georgia Code is left open to the discretion of a right to Jury Trial in the event of defenses made against foreclosure and non-judicial foreclosures prevail in the instance that no defense is made.

The action of state law really relies upon is Federal under the Department of Housing and Urban Development (HUD) and the FHA (ie "Fannie Mae" or Federal Housing Administration) due to the nature and laws of the Real Estate Settlement Procedures Act (RESPA) and Truth in Lending Act (TILA), as well as the federal regulations regarding consumer protections against wrongful foreclosures and the provisions of the Good Faith Estimate (GFE).

In Muscogee County, property taxation "rides with the Owner," not the home – unless the home itself is exempt from ALL property taxes, so the tax bill is dependent on Fair Market Value, who owns the home, and what property tax exemptions the Actual Bona Fide Owner is entitled to.

At the age of 65, which the prior owner was, about 80-percent of the property tax bill goes away BY REQUEST OF THE OWNER. I would not have been eligible for that exemption since I was not 65 when the taxes were assessed on 1/1/2016, four months prior to this closing date and definitely six months prior to the time when HUD required Quicken to review files and report CRITICAL errors as a DEL: Direct Endorsement Lender. They did not do so, in order to hide the error in data manipulation, then they simply "switched" the tax bill from the prior owner to my own and said "I bought it in 2013 and had only been paying **$144.22** per year and then when my taxes "unfroze," the bill went up to more than **$1,300** – but that never happened. EVER. Their own letter shows the error and responsibility is on their part.

Whether there was malicious intent or an "innocent" mistake, the error was still on Quicken's part and not my own. RESPA does not apply to me, it requires the Lender to act in good faith and due diligence between myself and HUD/FHA, and they did, in fact, break the law – and it impacted me to a degree that caused a 'domino effect' on the only income I had then and still have now.

# FEDERAL LAW, pg 1

RESPA – Real Estate Settlement Procedures Act of 1974 – 12 U.S.C. 2601 et seq.) , also known as 'REGULATION X' – provides for ...

- The act requires lenders, mortgage brokers, or servicers of home loans to provide borrowers with pertinent and timely disclosures regarding the nature and costs of the real estate settlement process. The act also prohibits specific practices, such as kickbacks, and places limitations upon the use of escrow accounts.
- The National Affordable Housing Act of 1990 amended RESPA to require detailed disclosures concerning the transfer, sale, or assignment of mortgage servicing. It also requires disclosures for mortgage escrow accounts at closing and annually thereafter, itemizing the charges to be paid by the borrower and what is paid out of the account by the servicer.

# FEDERAL LAW, pg 2

In 2008, HUD issued a RESPA Reform Rule (73 Fed. Reg. 68204, November 17, 2008) that included substantive and technical changes to the existing RESPA regulations and different implementation dates for various provisions.

Substantive changes included a standard Good Faith Estimate form and a revised HUD-1 Settlement Statement that were required as of January 1, 2010. Technical changes, including streamlined mortgage servicing disclosure language, *elimination of outdated escrow account provisions*, and a provision permitting an "average charge" to be listed on the Good Faith Estimate and HUD-1 Settlement Statement, took effect on January 16, 2009.

# FEDERAL LAW, page 3

### *Waiting periods for early disclosures and corrected disclosures.*
**(i)** The creditor shall deliver or place in the mail the good faith estimates required by paragraph (a)(1)(i) of this section not later than the seventh business day before consummation of the transaction.

~The Good Faith Estimate [https://themortgagereports.com/17354/mortgage-good-faith-estimate-guide ]

*A review of Quicken's Loan files shows no Good Faith Estimate was sent to me NO LATER THAN seven business days before the consummation of the transaction; but we're certain they could care less about defying that law either. They'd done it to many others and always gotten away with it.

# FEDERAL LAW, page 4

**(2)***Predisclosure activity* -
**(i)***Imposition of fees on consumer* -

**(A)***Fee restriction.* Except as provided in paragraph (e)(2)(i)(B) of this section, neither a creditor nor any other person may impose a fee on a consumer in connection with the consumer's application for a mortgage transaction subject to paragraph (e)(1)(i) of this section before the consumer has received the disclosures required under paragraph (e)(1)(i) of this section and indicated to the creditor an intent to proceed with the transaction described by those disclosures.

A consumer may indicate an intent to proceed with a transaction in any manner the consumer chooses, unless a particular manner of communication is required by the creditor.

The creditor must document this communication to satisfy the requirements of § 1026.25.

_____

*Discovery will find on a recorded telephone conversation that the extortion fee of $3,800 (prepaid unearned funds) was demanded from me by a representative of Quicken Loans in late 2017/early 2018 to cure their own defalcation, but I was not able to pay it of course. By that time, a loan modification to change it from FHA to conventional uninsured had already been done and approved by Jeraine Fuller, and then was suddenly "pulled back."*

FEDERAL LAW, page 5

**12 CFR 1026.19**
**(3)***Good faith determination for estimates of closing costs -*

**(i)***General rule.* An estimated closing cost disclosed pursuant to paragraph (e) of this section is in good faith if the charge paid by or imposed on the consumer does not exceed the amount originally disclosed under paragraph (e)(1)(i) of this section, except as otherwise provided in paragraphs (e)(3)(ii) through (iv) of this section.

**(ii)***Limited increases permitted for certain charges.* An estimate of a charge for a third-party service or a recording fee is in good faith if:
**(A)** The aggregate amount of charges for third-party services and recording fees paid by or imposed on the consumer does not exceed the aggregate amount of such charges disclosed under paragraph (e)(1)(i) of this section by more than 10 percent;
**(B)** The charge for the third-party service is not paid to the creditor or an affiliate of the creditor; and
**(C)** The creditor permits the consumer to shop for the third-party service, consistent with paragraph (e)(1)(vi) of this section.

**(iv)***Revised estimates.* For the purpose of determining good faith under paragraph (e)(3)(i) and (ii) of this section, a creditor may use a revised estimate of a charge instead of the estimate of the charge originally disclosed under paragraph (e)(1)(i) of this section if the revision is due to any of the following reasons:

**(A)***Changed circumstance affecting settlement charges.* Changed circumstances cause the estimated charges to increase or, in the case of estimated charges identified in paragraph (e)(3)(ii) of this section, cause the aggregate amount of such charges to increase by more than 10 percent. For purposes of this paragraph, "changed circumstance" means:
*(1)* An extraordinary event beyond the control of any interested party or other unexpected event specific to the consumer or transaction;
*(2)* Information specific to the consumer or transaction that the creditor relied upon when providing the disclosures required under paragraph (e)(1)(i) of this section and that was inaccurate or changed after the disclosures were provided; or
*(3)* New information specific to the consumer or transaction that the creditor did not rely on when providing the original disclosures required under paragraph (e)(1)(i) of this section.

QUESTIONS
(1) Was the "event" BEYOND THE CONTROL of any interested party or other UNEXPECTED EVENT specific to the consumer or transaction? NO. The controls were in place and conspicuous so when the title and taxes were pulled by the Title Company, Title Source nka AMROCK INC., as assessed on January 1, 2016.
(2) Was the information used SPECIFIC TO THE CONSUMER OR TRANSACTION upon Disclosure? NO. Someone else's assessed property taxes are not specific to the consumer or the transaction, but to the prior owner of the property who had sold it as of March 13, 2015;a and whose taxes were not specifically my own.
(3) Was the new information specific to the consumer or transaction that the creditor did NOT rely on when providing the original disclosures? The information was not –in fact- "new information" by any stretch of the imagination. It was there at the time of origination in April 2016, was willfully changed at origination in the underwriting department to force an illegal FHA approval, *by Quicken's own admission*, and then was changed back about a year later to what it should have been from the start.

# FEDERAL LAW, page 6

**(g)**_Initial escrow account statement_ - **(1)** _Submission at settlement, or within 45 calendar days of settlement._ As noted in § 1024.17(c)(2), the servicer shall conduct an escrow account analysis before establishing an escrow account to determine the amount the borrower shall deposit into the escrow account, subject to the limitations of § 1024.17(c)(1)(i). After conducting the escrow account analysis for each escrow account, the servicer shall submit an initial escrow account statement to the borrower at settlement or within 45 calendar days of settlement for escrow accounts that are established as a condition of the loan. **(i)** The initial escrow account statement shall include the amount of the borrower's monthly mortgage payment and the portion of the monthly payment going into the escrow account and shall itemize the estimated taxes, insurance premiums, and other charges that the servicer reasonably anticipates to be paid from the escrow account during the escrow account computation year and the anticipated disbursement dates of those charges. The initial escrow account statement shall indicate the amount that the servicer selects as a cushion. The statement shall include a trial running balance for the account. **(ii)** Pursuant to § 1024.17(h)(2), the servicer may incorporate the initial escrow account statement into the HUD-1 or HUD-1A settlement statement. If the servicer does not incorporate the initial escrow account statement into the HUD-1 or HUD-1A settlement statement, then the servicer shall submit the initial escrow account statement to the borrower as a separate document. **(2)** _Time of submission of initial escrow account statement for an escrow account established after settlement._ For escrow accounts established after settlement (and which are not a condition of the loan), a servicer shall submit an initial escrow account statement to a borrower within 45 calendar days of the date of establishment of the escrow account.

# FEDERAL LAW, Page 7

NOTE: There was no need to ESTIMATE MY TAXES, it was not new construction and the taxes were assessed in the county 1/1/2016. As of January 1, 2016, they were not in the amount of **$144.22** as so disclosed to HUD by Quicken Loans as an act of perpetuated FHA fraud. This was not an escrow re-analysis based on information SPECIFIC TO ME, the Consumer, as required by law, this was an escrow SWITCH between two very different property owners. Even if it was an "honest" mistake, it was still not mine and it was a matter of RESPA law. How honest could it be when the actual taxes were available by the tax assessor four months earlier?

MY property taxes were in excess of $1300 per annum on 1/1/2016, before origination of the loan Thus, I never received an accurate **INITIAL ESCROW ACCOUNT STATEMENT** at closing or even within 45 days of closing as required by federal law, but more than a year later, they switched the Escrows from the prior owner's property taxes to mine. He was eligible for an 80-percent *reduction* in his taxes because he was over the age of 65 and no longer had to pay the SCHOOL BOND portion, per Georgia law. That SWITCH between owners is about as fraudulent as it gets, especially when Quicken had or SHOULD HAVE HAD my property taxes sitting right in their hot little hands before this loan even closed.

The property tax FREEZE in Muscogee County leaves MY property taxes *now* just as they were assessed on 1/1/2016, 1/1/2017, and 1/1/2018. 'Froze is froze' – they did not go *up* or *down*, so no adjustment of escrows for "new" property taxes was needed or necessary, and there was no "new information" for a "new analysis" that was not readily available at the time of origination. It was not NEW information, it was swapped out information to cause a fraud insured loan and a default for purposes of collecting government insurance and not intended for me to keep my home and payments "affordable".

The switch came about between two entirely different property owners at two different times with entirely separate STATE PROPERTY TAX EXEMPTIONS. There was no escrow analysis adjustment that was "specific to the consumer" (that being me), there was a tax statement SWITCH between two COMPLETELY different owners with information used that was specific to the PRIOR OWNER, not the CONSUMER.

Question of Importance and Material Malfeasance: Is there leeway here to 'make up any ol' property tax numbers' for escrow analysis when the actual bill for that year is present and accounted for? Was an *estimate* needed with an *actual bill* present, or which should have been presented by the title company before closing? I seriously doubt it. This was not an escrow analysis adjustment based on the unknowable, it was an adjustment based on the *unthinkable*, as stated by the US Attorney who sued Quicken on the behalf of the Justice Department. By action of Georgia laws, property taxes RIDE WITH THE OWNER, not the property itself. The prior owner was eligible for exemptions that did NOT apply to me then or now. Did Quicken Loans BREAK FEDERAL RESPA LAW WITH REGARD TO ESCROW ANALYSIS AND RE-ANALYSIS ON ORIGINATION OF THIS LOAN? EMPHATICALLY - YES.

# FEDERAL LAW, Page 8

CFR 1024 -17
(e)*Transfer of servicing.*

(1) If the new <u>servicer</u> changes either the monthly payment amount or the accounting method used by the transferor (old) <u>servicer</u>, then the new <u>servicer</u> shall provide the borrower with an <u>initial escrow account statement</u> within 60 days of the date of <u>servicing</u> transfer.
(i) Where a new <u>servicer</u> provides an <u>initial escrow account statement</u> upon the transfer of <u>servicing</u>, the new <u>servicer</u> shall use the effective date of the transfer of <u>servicing</u>to establish the new <u>escrow account computation year</u>.
(ii) Where the new <u>servicer</u> retains the monthly payments and accounting method used by the transferor <u>servicer</u>, then the new <u>servicer</u> may continue to use the <u>escrow account computation year</u> established by the transferor <u>servicer</u> or may choose to establish a different computation year using a short-year statement. At the completion of the <u>escrow account computation year</u> or any short year, the new <u>servicer</u> shall perform an escrow analysis and provide the borrower with an <u>annual escrow account statement</u>.
(2) The new <u>servicer</u> shall treat shortages, <u>surpluses</u> and deficiencies in the transferred <u>escrow account</u> according to the procedures set forth in <u>§ 1024.17(f)</u>.

<u>SIDE NOTE</u>: Quicken transferred servicing of the loan over to ROCKET Mortgage at some point and without any specific notification to me before doing so. However, Rocket, as the NEW servicer, also did not provide an initial escrow account (IED) disclosure statement to me AT ALL. I only found out about the transfer after going online to make a payment. Since then, it is no longer clear to me who is servicing the loan since Quicken seems to have "taken back over" servicing the loan from Rocket for some reason and outside of their own disclosure to me that they did NOT intend to transfer or "sell" the loan after origination.

I did receive an escrow "refund" of $14 from Quicken, after their annual escrow analysis review showed there was too much money in the escrow account, which could not have been possible with such a severe deficiency caused by the switch from one taxpayer account to another.

# SUPPLEMENTALS

- UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, CIVIL ACTION 15-0613, as removed to US DISTRICT COURT, EASTERN MICHIGAN, Detroit
- Dan Gilbert vows he will never settle DoJ mortgage lawsuits, January 2018
- Quicken Loans Fraud on FHA Loans Is Costing a Single Dad with Four Children His Home, April 2018
- Quicken Loans Class Action Accuses Company of Sending Robocalls, May 2018
- ConsumerAffairs.com, as of December 2018
- Better Business Bureau, 956 Complaints as of November 2018, and more coming...

### PRIOR TO 2018

- Quicken Slapped with $11 Million Fine in Class-Action Appraisal Lawsuit, July 2017
- Quicken Loans Begins Long Journey with DoJ over FHA Violation Charges, February 2017
- Court Allows Lawsuit Against Quicken over Questionable Loans to Proceed, March 2017
- Financial Fraud and Quicken Loans: An Ongoing Battle, January 2017
- On Dan Gilberts' Ever-growing Rap Sheet and Corporate Welfare, August 2017
- Mortgage Fraud Results in Several Cases Totaling Over $100M against PHH, Prospect and Quicken Loans, August 2017
- Whistleblower Suit Against Quicken Loans Proceeds, May 2017
- Quicken Loans Inc. v. Walters, June 2017
- Quicken Loans and Title Source Hit With $11 Million Penalty in Appraisal Class Action, July 2017
- Quicken Loans Class Action Says Website Tracking Violates Wiretap Act, December 2017
- Justice Department Sues Quicken Loans for Mortgage Fraud, April 2015
- History of Fraud Allegations + Gilbert's Inflated Ego = No More Quicken Loans, April 2015
- Quicken Loans Worker Charged with Bank Fraud, April 2015
- Quicken Loans Lawsuit Against DoJ/HUD Tossed Out by Federal Judge, January 2016
- Judge Orders Quicken Loans to Pay $2.7 Million Award in West Virginia Fraud Case, February 2011; updated May 2014
- Claims of High Pressure Sales, Fraud at Odds with Quicken Loans Straight-shooting Image, February 2011
- Letter from CAVS Owner, Dan Gilbert re: Lebron James, December 2010 (in which Gilbert was obviously more concerned with losing his Golden Child than he is with stealing property and land from homeowners)
- Quicken Loans v. Brown, undated, LexisNexis

... THE BEGINNING ...

# ADDENDUMS

<u>QUOTE</u>

*Detroit-based Quicken, the nation's largest online home lender and fifth largest retail mortgage lender, has come under fire in a variety of legal forums. A Center investigation published earlier this month detailed claims from borrowers and ex-employees who accuse the company of taking advantage of vulnerable homeowners and using bogus appraisals and other falsified information to push through bad deals.*
*Quicken denies the allegations.*

*"We always try to do the right thing," Gilbert said in a telephone interview. "If we truly make an honest mistake, it usually doesn't even get to court — if we discover it, we make things right."* –Center for Public Integrity: <u>LINK</u>

<u>NOTE</u>
..."*make things right*"... Unless this does not apply to me, Jeraine Fuller attempted to make it right in the latter part of 2017, with a modified loan that was approved, which would have made things a lot easier for me ... but then pulled it back and demanded a $3,800 'upfront fee' in order for it to close and gave me 60 days to come up with the funds, or else. Or else happened.

QUOTE

*Quicken Loans, which Gilbert founded in 1985, touts a clean image, free of the subprime lending and other predatory practices that ravaged the industry a few years ago. Gilbert says, "Our people bring their 'A' game with them to work every day."*

*But Quicken is going to trial in federal court on Tuesday—several former employees, seeking overtime pay, have accused Gilbert's company of bullying homeowners into high-interest-rate loans or otherwise inflated mortgages.*

*Among other things, Quicken's employees were taught to "bruise" customers by identifying credit report red flags, then telling potential borrowers they wouldn't get loans elsewhere. In one fraud case decided last year, Quicken was found to have slapped a balloon payment of $107,000 on the end of a $145,000 loan, after 30 years. And Quicken issued that $145K loan despite a bogus appraisal that tripled the home's actual value.* – Deadspin.com, February 2011

NOTE
"A-game," said Gilbert, of whose company the Justice Department has numerous emails starting that executives know their employees are not trained to do their jobs. At No. 152, US Attorney's lawsuit as previously mentioned, "In 2008, Quicken required certain underwriters to take the 'Basic Income Calculations & Key Elements' test, to evaluate their proficiency in calculating and documenting a borrower's income. Only 44-percent of the underwriters passed the test, leading Quicken's Operations Director, Mike Lyon, to remark in an email that it was clear a number of underwriters '*need to go back to school.*' " That's A-game? That sounds like an *F-game* at 44-percent.

# QUOTE from US Attorney's Case in U.S. DISTRICT COURT, EASTERN MICHIGAN

No. 159 "Even if the quality of an underwriter's work was poor, Quicken demanded the underwriter increase the volume of his or her loan production. In the case of one underwriter, Jeanine Taylor, an Operations Director of the FHA Team, acknowledged in an email that his "quality scares me," but pronounced that she still intended to "give him the same warning as I do regarding his numbers." Thus, although an underwriter was producing FHA loans with poor quality, a Quicken Manager nonetheless intended to pressure him to increase his loan production. Quicken's underwriting FOCUS was clear – underwrite loans as quickly as possible, and approve as many as possible. Quicken's CEO Bill Emerson recognized that Quicken prioritized quantity over quality, writing in an email to Quicken's Operations Director, "no offense but I don't think me mover [sic] underwriters out for quality."

NOTE

That fact showed up in this loan where it appears that an FHA 'management exception' allowed the use of someone else's property taxes from a prior year in which I was not the property owner to calculate my escrows, and even to backdate the acquisition date of the property to "prove that out" even though my own property taxes were assessed and were available at the time. Rather than train, review, and QC their files ... they intentionally chose incentivized approving of loans rather than FHA-demanded reporting of 'critical' errors within 45 to 60 days of closing. Then, they attempted to cover up the MATERIAL ERROR by stating the narrative as *froze/unfroze* property taxes, as shown in the letter they sent to me when I demanded to know why they would do such a thing.

# QUICKEN's "LOUSY LOAN" LOAN POLICIES

No. 175, US District Court Case "Quicken approved loans for FHA insurance that it knew would perform poorly because FHA, not Quicken, would suffer the losses. Quicken saw FHA insurance as the "upside" to a bad loan. In an email to senior management Quicken's Operation Director, Mike Lyon, explained that Quicken approved a loan that was made up of 'lousy' parts that 'when added up as a whole...we would be hard-pressed to lend this guy a dime out of our pocket'. In responding to Quicken CEO Bill Emerson's question 'where is the upside on this one'? Mr. Lyon responded that 'the only upside here is we have FHA insurance.' " No. 176 "To Quicken, the only downside to an FHA loan was if FHA caught Quicken and the loan was declared uninsurable. In an email to Mr. Bonkowski and Mr. Lyon ('bonkers' and 'lyin'), Ms MacPherson wrote that a loan being underwritten by Quicken 'would be uninsurable if they [HUD] reviewed it prior to insuring. Chances are not high that they would review it. Quicken took that chance and insured the loan, in clear violation of HUD requirements, hoping Quicken would not get caught."

NOTE

I was an "FHA insurable *upside*" in their loan processing and underwriting schemes, not a human being with a home to love and protect. God always gives me the 'hard stuff' because He knows I am the only "lousy loan" that can see str8 through them.

# CONCLUSION OF THIS MATTER

It brings tears to my eyes to know that me and my house meant no more to them than part and parcel of a malfeasant 'lousy loan,' even with Federal RESPA law and HUD rules and regulations solidly in place to curb these kinds of mistakes.

I could have done Quicken's job *for* them, but how many other *Consumers* are required to do that? I just happen to know a *bit* more than others who are taken advantage of in this manner.

How much more clear can it get than... (Discovery Items Pending)

- I can't afford more than this, not a *penny* more.
- I purchased the property in 2015, not 2013.
- Those are *not* my property taxes.
- Will you at least hire me for a part-time *work at home* job to help pay for this before everything goes south?
- Besides these other immaterial things like food and petro, the Liberty gas bill is the only thing I can part with right now to make up the difference and it's going to be a bitterly cold winter.
- I guess I better see if I can get a small dollar credit card and a gas card so I can at least eat and get gas money now since money had to be shifted over to accommodate the $103 increase.
- The proof of the INTENDED defalcation of Quicken Loans is in the Team Leader letter already sent with other documentation, and this can be used as evidence, because they state that they committed the error from the start, which was not known to me until several **months**, not years, ago.

Psalm 50:6 –
"And the heavens declare His righteousness, For God Himself is judge. Selah"

## CERTIFICATE OF SERVICE

I certify that on <u>March 8, 2019</u>, the Plaintiff, with regard to ORDER to dismiss this case, was mailed out to Defendants by United States Mail to:

**Janine Cone Metcalf**, Attorney for Defendants **Quicken Loans, Amrock** Inc. (f/k/a Title

Source/Michelle Ruff, Esq.), and **MERS** (Mortgage Electronic Registration Systems, Inc.)

Georgia Bar No. 503401

**David H. Bouchard**

Georgia Bar No. 712859

**JONES DAY**

1420 Peachtree Street, NE, Ste 800

Atlanta GA 30309

404 581 3939

\*Other Defendants <u>not</u> initially sued by Plaintiff / Quicken Loans Notary Signing Agent, Cook & James LLC notwithstanding, but also as dismissed <u>with prejudice</u>.

Shereen R. Greene, Pro Se Plaintiff